**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>Abbott Simon Estrin and<br>Deborah Leah Estrin,<br><br>Debtors. | C/A No. 14-04795-dd<br><br>Chapter 7<br><br>**ORDER** |

This matter comes before the Court on a Motion to Extend Time to File Objection to Debtors Discharge [*sic*] ("Motion") filed by creditor Twin City Fire Insurance Company, a division of the Hartford ("Twin City"), and the objection of Debtors Abbott Simon Estrin and Deborah Leah Estrin ("Debtors"). After careful consideration of the applicable law, arguments of counsel, and evidence submitted, Twin City's Motion is granted. Twin City has until March 8, 2015 to file a complaint objecting to the dischargeability of its debt pursuant to 11 U.S.C § 523.[1] The automatic stay is also modified to permit Twin City to file and pursue a motion to transfer the Central District of California litigation to the District of South Carolina.

**I.    Facts and Procedural History**

The parties do not dispute the underlying facts relevant to this Motion. On or about July 12, 2013, Twin City filed a complaint with the federal court in the Central District of California against the Debtors and three other defendants. The complaint asserted various causes of action, including conspiracy and fraud, in connection with employment recruiting services provided by the Debtors and the other defendants.

---

[1] In connection with this motion, and in anticipation of the filing of its § 523 complaint, Twin City also filed a motion for relief from stay. As discussed *infra*, Twin City and the Debtors are involved in litigation in California. Twin City requests that this Court modify the stay so that it can file a motion to transfer venue of the California litigation to South Carolina. The parties agreed at the January 27, 2015 hearing that should the Court deny Twin City's Motion, granting relief from stay would serve no purpose. In the event the Court granted the Motion, the Debtors consented to Twin City's request for relief from stay.

1

On August 25, 2014, the Debtors filed for protection under chapter 7 of title 11 in South Carolina. A notice of the bankruptcy filing was sent to all scheduled creditors, stating that the § 341 meeting of creditors was scheduled for October 7, 2014, and that the last day to oppose discharge or the dischargeability of certain debts was December 8, 2014. Twin City is listed both in the Debtors' schedules and on the certificate of service for the notice.

On August 29, four days after the Debtors filed their bankruptcy, Twin City's counsel contacted the Debtors' attorney, Lauren Clark, and asked if the Debtors would consent to a non-dischargeable fraud judgment. On September 17, Twin City again attempted to contact Ms. Clark, inquiring as to whether she represented the Debtors with regards to potential dischargeability causes of action.[2] Ms. Clark did not respond to either communication.

On October 8, 2014, Twin City attended the meeting of creditors. After the meeting, Twin City informed the Debtors that it intended to file a nondischargeability action and asked if the Debtors would sign a confession of judgment. The Debtors refused. Twin City also asked the Debtors if they would agree to transfer venue of the California litigation to South Carolina. The Debtors did not directly respond to this later request, and instead informed Twin City that it needed to file an objection to discharge.

On October 10, 2014, the United States Trustee filed a notice stating she was investigating the Debtors' case for abuse pursuant to 11 U.S.C. § 704(b)(2). The notice stated that the United States Trustee would file a motion or statement indicating whether she was seeking conversion and/or dismissal within 30 days. On November 4, 2014, the United States Trustee filed a statement stating that she was not seeking dismissal or conversion because of the Debtors' changed circumstances.

---

[2] Ms. Clark's fee agreement with the Debtors excludes representations on appeal and adversary proceedings.

2

On November 13, 2014, Twin City again contacted the Debtors and asked if they would consent to lifting the stay so that Twin City could file a motion to transfer venue in the California litigation. The Debtors again refused and told Twin City it needed to file an objection to discharge.[3]

On November 26, 2014, a week and a half before the deadline to file a nondischargeability complaint, Twin City filed this Motion.[4] The Motion states that, pursuant to Fed. R. Bankr. P. 4007(c), cause exists to extend the deadline to object to discharge because Twin City is attempting to transfer venue of its cause of action from California to South Carolina before filing its nondischargeability complaint.[5] At the hearing held on the Motion, Twin City furthered its request by arguing that its communications with the Debtors throughout their bankruptcy; its candor regarding its intentions in filing the complaint; and the promptness upon which it acted in filing the Motion and request for relief from stay after the United States Trustee noticed that she would not be requesting dismissal are all evidence that Twin City acted diligently to protect its rights. Finally, Twin City argues that these facts show that an extension

---

[3] The above-listed interactions between the Debtors' and Twin City's attorneys were, by and large, brought to the Court's attention at the initial hearing on the motion to extend held in Charleston. The representations of counsel as to these conversations are not necessarily complete. It is clear, however, that a representative from Twin City and a representative of the Debtors have been in contact throughout the duration of this bankruptcy, and that the parties were involved in negotiations. From the time the bankruptcy was filed, the Debtors were aware that Twin City was seeking to consolidate the California litigation with a nondischargeability adversary proceeding.

[4] In its Motion, Twin City requests that the Court extend the deadline to object to discharge pursuant to Fed. R. Bankr. P. 4004(c), as well as the deadline to object to the dischargeability of certain debts pursuant to Fed. R. Bankr. P. 4007(c). However, the Motion requests the extension solely to file a § 523 proceeding, and, in the hearings on the Motion, Twin City only discussed objecting to the dischargeability of its debt. The Court therefore does not consider whether Twin City would be entitled to an extension of time to object to discharge pursuant to Fed. R. Bankr. P. 4004(c).

[5] Twin City filed its motion for relief from stay to pursue filing the motion to change venue on the same date. The Court held a preliminary hearing on the motion for relief on January 8, 2015, at which time the parties agreed to treat the hearing preliminary, and continue the motion for relief pending the Court's determination of this Motion.

will neither prejudice the Debtors because they had notice of Twin City's intention, nor delay the administration of the estate because Twin City acted promptly.

The Debtors object to the Motion. The Debtors argue that Twin City's actions fail to establish cause for an extension of time because Twin City was well aware of the deadline to file its complaint and had all the facts it needed to file its nondischargeability complaint prior to the deadline. The Debtors urge the Court to construe Fed. R. Bankr. P. 4007(c)'s cause requirement strictly, and only permit parties to obtain extensions of the deadline when the party can show "compelling circumstances." The Debtors also dispute Twin City's assertion that the California litigation should be transferred to South Carolina before it files its nondischargeability complaint.

The Court held a hearing on the Motion on January 27, 2015. At the hearing, both parties provided the Court with argument and case law in support of their positions. The Court then took the matter under advisement.

**II.    Discussion**

The filing of a bankruptcy petition and the conclusion of the administration of the case generally provide debtors with a discharge of their pre-petition personal liability for debts. *See* 11 U.S.C. §§ 727(a); 1141; 1228(a); 1328. However, in accordance with the well-settled principle that bankruptcy relief is only available for the honest but unfortunate debtor, this discharge is subject to exceptions. Section 523 lists nineteen categories of debts that are nondischargeable. The procedures for determining whether a debt falls within these categories are provided for in the Federal Rules of Bankruptcy Procedure. Fed. R. Bankr. P. 7001 provides that proceedings to determine the dischargeability of a debt are adversary proceedings that require the filing of a complaint. Fed. R. Bankr. P. 4007(c) provides that complaints filed

pursuant to § 523(c) "shall be filed no later than 60 days after the first date set for the meeting of creditors … ." Section 523(c) includes those debts described under § 523(a)(2), (4) or (6), and encompasses the types of causes of action at issue here. Finally, Fed. R. Bankr. P. 4007(c) provides that this time limit may be extended for creditors that (1) file a request for an extension before the 60-day time period expires and (2) show cause.

Here, the parties agree that Twin City's request was timely filed; at issue is whether cause exists to extend the deadline.

The Bankruptcy Code does not define "cause." [6] *See In re Miles*, 453 B.R. 449, 451 (Bankr. N.D. Ga. 2011). Some courts construe "cause" as narrowly constraining the court's power to grant extensions past the 60 day deadline. *See e.g., In re Garner*, 339 B.R. 610, 611 (Bankr. W.D. Tex. 2006) (grounds for extending time must be "compelling"); *Huntington Nat'l Bank v. Lewis (In re Lewis)*, 224 B.R. 619, 621 (Bankr. S.D. Ohio 1997) (same). These courts view strict enforcement of the 60 day deadline as furthering the prompt administration of the estate, and in accordance with the finality of the discharge. *In re Boltz-Rubinstein*, 454 B.R. 614, 619 (Bankr. E.D. Pa. 2011).

Other courts, however, view the "cause" standard more liberally. These courts reason that because the Bankruptcy Code attempts to balance the interests of both debtors and creditors, a court should extend the deadline for cause if doing so "fosters rudimentary fair play and clean hands notions." *Matter of Amezaga*, 192 B.R. 37, 41 (Bankr. D.P.R. 1996). These courts reason that because the Bankruptcy Code preserves the debtor's fresh start solely for the "honest but unfortunate" debtor, a strict bar against extending the deadline to object to discharge would be

---

[6] Fed. R. Bankr. P. 4004, which sets out the procedures for objecting to a debtor's discharge pursuant to § 727, tracks the language in Fed. R. Bankr. P. 4007, which provides the procedures for objecting to the discharge of specific debts pursuant to § 523. Most courts therefore use the cases discussing the rules interchangeably, *Kontrick v. Ryan*, 540 U.S. 443, 448 n.3 (2004), and this Court will do the same.

inappropriate as it would permit "the dishonest debtor … [to] walk away with a clean slate." *Boltz-Rubenstein*, 454 B.R. at 620 (citing *In re Polinski*, Case No. 07-10102, Adv. No. 07-01037, 2008 WL 844830, at *3 (B.A.P. 9th Cir. 2008)). A cause analysis should therefore require courts to weigh the competing interests at stake in the case, rather than view extensions as only rarely granted in extraordinary cases. *Id*.

The Court finds this latter view more persuasive. Both the Supreme Court and the Fourth Circuit have considered the Bankruptcy Rules applicable here, though not in a way that is dispositive of the ultimate issue. The Supreme Court has held that the Bankruptcy Rules governing objections to discharge are "claim-processing rules" rather than jurisdictional constraints, and thus may be subject to equitable defenses. *Kontrick v. Ryan*, 540 U.S. 443, 454 - 57 (2004). The Fourth Circuit has held that these rules are subject to equitable defenses. *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 248 (4th Cir. 1994). Additionally, in *Farouki*, the Fourth Circuit noted that a court could exercise its equitable powers in "extraordinary circumstances" when a filing was untimely. *Id*. The general principles that the discharge and dischargeability rules are not strict jurisdictional bars and are subject to more flexible, equitable considerations when parties fail to comply with the rules suggest against the strict "compelling" standard when a party *has* complied with the rules. This Court therefore rejects the narrow interpretation of Rule 4007(c)'s "cause" requirement, and looks to those cases where courts have construed "cause" more liberally for guidance.

Courts taking the liberal view consider a variety of factors in their analysis, such as (1) whether the debtor has refused to cooperate with the creditor in bad faith; (2) whether the creditor has sufficient notice of the deadline and the information to file an objection; (3) whether the proceedings in a different forum will result in collateral estoppel on the relevant issues; (4)

whether the creditor exercised diligence; and (5) the complexity of the case. *Boltz-Rubinstein*, 454 B.R. at 620 (citations omitted). Other courts summarize these factors as considering (1) whether granting the delay will prejudice the debtors; and (2) the length of the delay and its impact on efficient court administration. *Id*.

Here, while this presupposes no bad faith on the Debtors' part, the Debtors have not consented to an extension or otherwise cooperated with Twin City. Twin City's explanation that it was waiting to see if the case would be dismissed before pursuing its nondischargeability complaint relieves it of any taint that its actions were merely dilatory. Twin City credibly asserts that its primary goal in seeking an extension is to transfer venue and combine related litigation of liability on the underlying debt and issues of dischargeability rather than delay the administration of the Debtors' case. Twin City has consistently attempted to negotiate with the Debtors to have both the civil and bankruptcy proceedings tried in one place

Twin City did have notice of the deadline and could have filed its nondischargeability complaint prior to the deadline, and perhaps it should have done so. However, this is only one factor in the Court's analysis of cause. The remaining facts support extending the deadline so that Twin City may file its complaint. The facts central to the California litigation over liability are central to the fraud claim to be made in the dischargeability complaint, and a potential collateral estoppel effect stemming from one adjudication or the other seems likely. The transfer of the California litigation to South Carolina was initially complicated by the existence of defendants other than the Debtors. Those issues have been resolved by settlement with or dismissal of those other defendants. It is reasonable that a creditor would view waiting until diversity jurisdiction issues were resolved as a more efficient use of resources for all parties involved rather than simply adding a second lawsuit to the mix. Finally, Twin City's request to

7

extend time will have no effect on the administration of this case and will not prejudice the Debtors. Under these facts, cause exists for a one-time extension of the deadline.

### III.   Conclusion

Rule 4007(c)'s requirement of "cause" to extend the time to object to the dischargeability of certain debts should be not be interpreted too strictly. Twin City has met its burden proving that cause exists to extend the deadline. The motion to extend the time until March 8 for Twin City to object to the discharge of its debt is granted.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**02/05/2015**



_____
David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

Entered: 02/05/2015